IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-09-00126-CV

 

The City of Waco,

                                                                                    Appellant

 v.

 

Armando Fuentes, III,

                                                                                    Appellee

 

 



From the 414th District
Court

McLennan County, Texas

Trial Court No. 2003-875-3

 



MEMORANDUM  Opinion










 

            Armando Fuentes was involved
in an accident with a City of Waco garbage truck.  The pickup Fuentes was
driving was rear-ended by the City truck.  Fuentes suffered neck, back, and
ankle injuries.  Fuentes sued the City after ultimately having back surgery
with continued pain in his neck and back.  The jury awarded Fuentes almost
$400,000 in damages.  The trial court reduced that amount to $250,000.  The
City appeals.  Because we find the evidence sufficient to support $250,000 in
damages and because we find the trial court did not err in admitting certain
expert testimony, we affirm the judgment of the trial court.

Expert
Testimony

            The City contends that the
trial court erred in allowing Dr. Michael Riggs to testify as an expert on
certain subjects about which Riggs was allegedly not qualified to testify.

            Rule 702 of the Texas Rules
of Evidence permits a witness qualified as an expert by knowledge, skill,
experience, training, or education to testify on scientific, technical, or
other specialized subjects if the testimony would assist the trier of fact in
understanding the evidence or determining a fact issue.  Tex. R. Evid. 702; Gammill v. Jack
Williams Chevrolet, 972 S.W.2d 713, 718 (Tex. 1998).  A two-part test
governs whether expert testimony is admissible: (1) the expert must be qualified;
and (2) the testimony must be relevant and be based on a reliable foundation.  Helena
Chem. Co. v. Wilkins, 47 S.W.3d 486, 499 (Tex. 2001); E.I. du Pont de
Nemours & Co. v. Robinson, 923 S.W.2d 549, 556 (Tex. 1995).  

            The trial court makes the initial
determination about whether the expert and the proffered testimony meet the
requirements of Rule 702.  Helena, 47 S.W.3d at 499; Robinson,
923 S.W.2d at 556.  The trial court also has broad discretion to determine
admissibility, and we will reverse only if there is an abuse of that
discretion.  Helena, 47 S.W.3d at 499; Robinson, 923 S.W.2d at
558.  In deciding if an expert is qualified, trial courts "must ensure
that those who purport to be experts truly have expertise concerning the actual
subject about which they are offering an opinion."  Gammill, 972
S.W.2d at 719 (quoting Broders v. Heise, 924 S.W.2d 148, 152 (Tex. 1996)). 

            Prior to the trial on the
merits, the City filed a motion to strike Riggs’s testimony or, alternatively,
to limit Riggs’s testimony.  The City argued in its motion that Riggs admitted
he was not a neurosurgeon and thus, he lacked specialized knowledge and
expertise to testify about causation between the accident and Fuentes’s
injuries.  Riggs’s testimony was to be submitted by video deposition.  The
trial court denied the City’s motion except for certain excerpts of the
deposition.  Neither party complains about the deposition excerpts that were
not allowed to be shown to the jury.  On appeal, the City challenges Dr.
Riggs’s qualification as an expert to offer opinion testimony as an accident
reconstruction expert or to offer opinion testimony that the accident caused
Fuentes’s injury.

            The first challenge, that
Riggs was not qualified to offer opinion testimony as an accident reconstruction
expert, was not presented to the trial court in either the City’s motion to
strike or in its argument at the pre-trial hearing regarding the City’s
motion.  Because the trial court did not have an opportunity to consider this
challenge, the City cannot now raise it on appeal.  Accordingly, this
particular challenge on appeal is not preserved for our review.  See Tex. R. App. P. 33.1.

            As to the second challenge,
that Riggs was not qualified to offer opinion testimony that the accident
caused Fuentes’s injury, it is unclear from the record what the trial court
reviewed to determine Riggs’s qualifications.  At the hearing on the motion to
strike, the following exchange took place between the court and counsel for the
parties.

            THE COURT:  Number 1, do we
have a complete –

 

            MR. OATES:  Yes

 

            THE COURT:  -- copy of Dr.
Riggs’ –

 

            MR. LEE:  Would you like a
copy?

 

            THE COURT: -- deposition?  I
think y’all are probably going to have to leave it with me, so I can read –

 

            MR. OATES:  This can be your
personal copy, Your Honor.

 

            THE COURT:  --what it is
y’all are objecting to.

 

                                    And
you’re wanting to offer the entirety of Dr. Riggs deposition, Mr. Lee?

 

            MR. LEE:  No.  No, Your
Honor.  And I can give you –

 

            MR. OATES:  Basically, the
first 75, 76 pages.

 

            MR. LEE:  -- I can give you
the – I can give you the – I took – I copied and pasted the parts that I want
to offer.  I can give you a copy of that.  I have actually got some highlights
on it, maybe if –

 

            MR. OATES:  He took out all
of my objections, so it’s a little bit difficult to read his version.

 

            MR. LEE:  If you like, I can
make a clean copy of this and provide it to you that will show you separately. 
But –

 

            THE COURT:  Well have you
given your page/lines to Mr. Oates?  And can you not just give me that?

 

            MR. LEE:  The way I did it
is, I gave him a – I did exactly like what we have here.  I copied and -- I
copied and pasted the testimony, the question and answer, instead of typing
Page 1, Line whatever.  You know, it’s easier, I think, on Mr. Oates to go back
and just read what I’m offering instead of having to look at page and line and
go back and forth, so … and that’s why.  And you’re more than welcome to have
this copy, if you want – if you don’t mind.  Just my highlights – or I can take
this to a copier and make a copy that doesn’t have my highlights on it.  That
will have – so you can have my page and line.

 

            THE COURT:  Well, I need to
know what it is that you’re proposing to offer and what it is you’re objecting
to.  So I think I have your objections.  Do you have page/line objections?

 

            MR. LEE:  To Dr. Riggs?

 

            THE COURT:  To Dr. Riggs?

 

            MR. OATES:  I got this this
morning, Your Honor.  I got Riggs at 8:40 this morning.  So I have my
handwritten objections and I can certainly provide that.  But it’s – there’s a
lot of objections, Your Honor.  I’m sorry.  But he asked a lot of leading
questions that were improper and a lot of form and a lot of non-responsive
answers by Dr. Riggs.  I object very little through the first 19 – 17 pages. 
And then he starts jumping into the – all the causation and opinion testimony
that Dr. Riggs is not qualified to give.  And that’s when –

 

            MR. LEE:  Whatever your
preference is, Your Honor.  I mean, I can, you know –

 

            THE COURT:  I don’t care if
it’s highlighted.  Mr. Oates may care if it’s highlighted.  I don’t care if
it’s highlighted.  

 

            MR. OATES:  It doesn’t
bother me, Your Honor.

 

            MR. LEE:  I don’t know how
long you’re gonna be here.  I can run across the street to Mr. Layman’s office
and make a copy, if the highlights won’t come out.

 

            THE COURT:  And I’m sure –

 

            MR. LEE:  Or I can go
through and read you the page and line if you want to just write down the page
and line.

 

            THE COURT:  Mr. Oates, do
you care if I have his highlighted copy?

 

            MR. OATES:  I do not care,
Your Honor.  Whatever is the easiest on the Court, I am all for that.

 

***

 

            THE COURT:  All right.  Like
I say, I’m going to have to read Dr. Riggs’ deposition.  So y’all are going to
have to – if there’s anything else you want to say about Dr. Riggs, say it
now.  And then I’ll – I’ll rule in letter form, probably, once I have reviewed
it.

 

            MR. OATES:  I would just
stay this, Your Honor.  If the Court gives us instruction as to what Dr. Riggs
can opine on and cannot opine on, I think Mr. Lee and I can probably go through
and decide on most of the stuff.  And so – but, you know, we’ll certainly do
whatever the Court wants us to do on that.

 

            THE COURT:  Like I say,
without reading his deposition, he can certainly talk about his visits with Mr.
Fuentes.  He, like I say, can talk about whatever he saw on x-ray, if he
reviewed the ex-rays.  He can talk about that.  Where I’m going to have a
problem with Dr. Riggs is if he’s trying to talk about anything related to
neurosurgery.  And since I don’t know exactly what he said and what it is
y’all are – I can’t rule on it without reading it.  (emphasis added).

 

            After reviewing
what was submitted by the parties, the trial court denied the City’s motion to
strike or limit Riggs’s testimony except for certain excerpts of the
deposition.  From the above exchange, we as well cannot “rule on it without
reading it.”  We cannot determine whether the trial court abused its discretion
because we do not have before us the evidence the trial court considered in
making its ruling on the motion.  Did the trial court consider only parts of
the deposition?  What parts were considered?  Did the trial court consider the
entire deposition including Riggs’s curriculum vitae?  We do not know.  We also
have no knowledge of the content of the City’s handwritten objections which the
trial court considered as well before making its ruling.  Nothing was admitted
into evidence for the purpose of the hearing that would show us exactly what
the court considered.  We questioned our ability to review this issue in an
order for referral to mediation; however, the City specifically informed us
after mediation was unsuccessful that no clarification regarding what the trial
court reviewed was necessary.  

An
appellant cannot prevail in any evidentiary challenge without first meeting his
burden of presenting a sufficient record on appeal.  Nicholson v. Fifth
Third Bank, 226 S.W.3d 581, 583 (Tex. App.—Houston [1st Dist.] 2007, no
pet.).  Because the record is insufficient as to what the trial court reviewed
in making its ruling, we cannot say that the court abused its discretion in
denying the City’s motion to strike or limit Riggs’s testimony, essentially
finding Riggs qualified to offer opinion testimony that the accident caused Fuentes’s
injury.  This issue is overruled.

Legal and Factual Sufficiency of the Evidence

            The remainder of the City’s
issues relate to whether certain evidence was either legally or factually
insufficient to support the jury’s verdict.  

            In conducting a legal
sufficiency review, we view the evidence in the light most favorable to the
verdict, credit favorable evidence if a reasonable juror could, and disregard
contrary evidence unless a reasonable juror could not.  City of Keller v. Wilson, 168 S.W.3d 802, 822, 827 (Tex. 2005).  A legal sufficiency issue
will be sustained if the record reveals one of the following: (1) the complete
absence of a vital fact, (2) the court is barred by rules of law or of evidence
from giving weight to the only evidence offered to prove a vital fact, (3) the
evidence offered to prove a vital fact is no more than a scintilla, or (4) the
evidence established conclusively the opposite of the vital fact.  Id. at 827.

            When considering a factual
sufficiency challenge to a jury's verdict, as the reviewing court, we must
consider and weigh all of the evidence, not just that evidence which supports
the verdict.  Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-407
(Tex. 1998).  We can set aside the verdict only if it is so contrary to the
overwhelming weight of the evidence that the verdict is clearly wrong and
unjust.  Id. at 407.  We are not a fact finder; accordingly, we may not
pass upon the witnesses' credibility or substitute our judgment for that of the
jury, even if the evidence would clearly support a different result.  Id. 
In reviewing a challenge that an award for a category of damages is excessive
because there is factually insufficient evidence to support it, we should
consider all the evidence that bears on that category of damages, even if the
evidence also relates to another category of damages.  Golden Eagle Archery,
Inc. v. Jackson, 116 S.W.3d 757, 773 (Tex. 2003).  To do otherwise would
mean that evidence that reasonably could have supported the jury's award would
not be considered, which would be improper. 

Causation

            The City contends the
evidence of causation was both legally and factually insufficient to support
the verdict.  Specifically, the City argues that there is no evidence of
causation between the accident and Fuentes’s injuries to his back and neck. 
The City also argues that the evidence that Fuentes suffered back and neck
injuries as a result of the accident is so weak and evidence to the contrary is
so overwhelming that the jury’s award of damages was manifestly wrong and
unjust.  The City does not dispute the sufficiency of the evidence regarding
the causation of the injury to Fuentes’s ankle.

            To constitute evidence of
causation, an expert opinion must rest in reasonable medical probability.  Burroughs
Wellcome Co. v. Crye, 907 S.W.2d 497, 500 (Tex. 1995) (citing Insurance
Co. of North Am. v. Myers, 411 S.W.2d 710, 713 (Tex. 1966)).  Expert
testimony that is not based on a reasonable medical probability, but that
instead relies on possibility, speculation, or surmise, does not assist the
trier of fact and cannot support a judgment.  Merrell Dow Pharms., Inc. v.
Havner, 953 S.W.2d 706, 712 (Tex. 1997); City of Laredo v. Garza,
293 S.W.3d 625, 629 (Tex. App.—San Antonio 2009, no pet.).  Reasonable probability
is determined by the substance and context of the opinion, and does not turn on
semantics or on the use of a particular term or phrase.  Burroghs, 907
S.W.2d at 500; Myers, 411 S.W.2d at 713.

            The City’s sole argument
regarding the evidence of causation between the accident and the injury to
Fuentes’s back is that Riggs was the only doctor to testify that the accident
caused the slippage in Fuentes’s lumbar spine and that Riggs was not qualified
to give such an opinion.  The determination of this part of the issue is
dependent upon a favorable determination of the City’s issue regarding Riggs’s
qualification to testify.  Because we found the trial court did not abuse its
discretion in finding Riggs qualified, Riggs’s testimony will be considered in
our review.  Not only did Riggs testify that the accident caused the injury to
Fuentes’s back, he also testified that the accident caused Fuentes’s neck
injury and the injury to Fuentes’s ankle.  Dr. Ellis, an orthopedic surgeon,
also testified that Fuentes injured his ankle in the accident.  

            Dr. Hamilton, a
neurosurgeon, testified that Fuentes had a disc bulge in his neck that could
have been caused by either a degenerative process or traumatic events. 
Although Hamilton said that he could not state within a reasonable medical
probability that the disc bulge in Fuentes’s neck was caused by the accident
because he had no images of Fuentes’s neck before the accident, he stated that
he had to base his beliefs on what the patient reports and Fuentes reported that
he had no neck problems prior to the accident.  Hamilton believed that what
Fuentes told him, in essence that he had no neck problems prior to the
accident, was consistent with the injury being caused by trauma from a motor
vehicle accident.  Hamilton also testified that Fuentes had both a boney
defect, or spondylolysis, and bone slippage, or spondylolitheis, in his lower
back.  Hamilton believed the defect was congenital but had no way of
determining whether the slippage was degenerative or due to a traumatic event
such as the accident because he had no x-rays of Fuentes’s lower back before
the accident.  However, Hamilton stated that if Fuentes had no symptoms or
problems with his back prior to the accident, then he believed the accident
caused the current problem.  Fuentes reported to Hamilton that he had no back
or neck problems prior to the accident.  He also testified at trial that he had
no prior problems except for a time when he thought he had the flu and his back
hurt.  He stated that when the flu went away, the pain went away.

            The City’s expert, Dr.
Desaloms, stated that he did not see anything on the MRI of Fuentes’s spine
that looked like it was caused by trauma.  Further, to him, a disc bulge
typically was not something that would be caused by trauma.  Desaloms also
stated there was no medical evidence that Fuentes had a neck injury from the
accident.  He did testify, however, that Fuentes’s decreased range of motion in
his neck was caused by the accident.

            Reviewing the evidence under
the appropriate standards, we cannot say that the evidence of causation was no
more than a scintilla of evidence nor can we say that the evidence is so
contrary to the overwhelming weight of the evidence that the verdict is clearly
wrong and unjust.  Accordingly we find the evidence of causation to be legally
and factually sufficient to support the verdict.

Future Physical Pain and Mental
Anguish—Legal Sufficiency

            The City challenges the
legal sufficiency of the evidence supporting the jury’s award of $50,000 for future
physical pain and mental anguish.  Neither the charge nor the jury’s answer
distinguishes between these categories of damages.  There was no objection to
the joinder of physical pain and mental anguish in the charge.  Therefore, the Casteel
and Harris County cases are not implicated in this issue.  See Harris
County v. Smith, 96 S.W.3d 230 (Tex. 2002); Crown Life Ins. Co. v.
Casteel, 22 S.W.3d 378 (Tex. 2000).

            Physical Pain

            The evidence to support a
claim for future physical pain must show a reasonable probability of the
occurrence of future ill effects of the injury.  Port Terminal R. Asso. v.
Ross, 289 S.W.2d 220, 228 (Tex. 1956).  In this case, Dr. Hamilton
testified that Fuentes would never be pain free.  Dr. Riggs testified that
Fuentes would likely have pain continuously for the foreseeable future, at
least 15 to 20 years.  Fuentes said the surgery took away some of his pain but
the pain is still there.  Fuentes also stated that Dr. Hamilton told him he
would never be the same individual as before.  

            After reviewing the evidence
under the appropriate standard, we believe it to be legally sufficient to
support damages for future physical pain.  Accordingly, this portion of the
City’s arguments is overruled.

            Mental Anguish

            Mental anguish damages cannot
be awarded without either direct evidence of the nature, duration, or severity
of the anguish, thus establishing a substantial disruption in the plaintiff’s
daily routine, or other evidence of a high degree of mental pain and distress
that is more than mere worry, anxiety, vexation, embarrassment, or anger.  Saenz
v. Fidelity & Guar. Ins. Underwriters, 925 S.W.2d 607, 614 (Tex. 1996) (quoting Parkway Co. v. Woodruff, 901 S.W.2d 434, 444 (Tex. 1995))
(internal quotation marks omitted).  

            The City contends the
evidence of future mental anguish is legally insufficient because there is no
evidence that Fuentes’s neck or back injury was proximately caused by
accident.  We have already decided that the evidence was legally sufficient to
show that Fuentes’s neck and back injuries were proximately caused by the
accident.  This portion of the City’s argument is overruled.

Past and Future Physical Pain and Mental
Anguish—Factual Sufficiency

            The City challenges the
factual sufficiency of the evidence supporting the jury’s award of $75,000 in
damages for past physical pain and mental anguish and $50,000 for future
physical pain and mental anguish.  Again, neither the charge nor the jury’s
answer distinguishes between physical pain and mental anguish in either the
past or future category.  Again there was no objection to the joinder of
physical pain and mental anguish in the charge.  Therefore, the Casteel
and Harris County cases are, likewise, not implicated in this issue.  See
Harris County v. Smith, 96 S.W.3d 230 (Tex. 2002); Crown Life Ins.
Co. v. Casteel, 22 S.W.3d 378 (Tex. 2000).

            Physical Pain

            The City contends the
evidence supporting the amount of damages associated with past and future
physical pain is factually insufficient only because it believes the evidence
of causation as to Fuentes’s neck and back injuries was factually insufficient. 
Thus, its argument continues, an award of $75,000 for past physical pain and
$50,000 for future physical pain for Fuentes’s neck injury is too much.  We
have held that the evidence of causation for all of Fuentes’s injuries was both
legally and factually sufficient.  The City presents no other reason why the
evidence supporting this damage award as to past and future physical pain is
factually insufficient.

            Accordingly, these portions
of the City’s arguments are overruled.

            Mental Anguish

The City also contends the evidence of
future mental anguish is factually insufficient because there is no evidence
that Fuentes’s neck or back injury was proximately caused by the accidence and
because there is factually insufficient evidence that the damages were
proximately caused by the accident.  We have already decided that the evidence
was legally and factually sufficient to show that Fuentes’s neck and back
injuries were proximately caused by the accident.  Further, the City presents
no argument in support of its claim that there is factually insufficient
evidence that the damages were proximately caused by the accident.  This
portion of the City’s argument is overruled.

The City further contends the evidence
of past mental anguish is factually insufficient because the evidence does not
meet the level of a high degree of mental pain and distress caused by the
accident.  Because of our review of the factual sufficiency of past and physical
pain, we need not reach a review of past mental anguish.

A determination of damages for pain and
how much to award is uniquely within the province of the jury, see Golden
Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 772 (Tex. 2003), and the
record contains ample evidence to support that Fuentes was injured and endured
pain and suffering as a proximate cause of the accident.  The jury could have
awarded the entire $75,000 for past physical pain and none for past mental
anguish.  Accordingly, this portion of the City’s argument is overruled.

Lost Earning Capacity in the Past

            Loss of earning capacity is
the plaintiff's diminished capacity to earn a living. Bituminous Cas. Corp.
v. Cleveland, 223 S.W.3d 485, 491 (Tex. App.—Amarillo 2006, no pet.) (citing
Koko Motel v. Mayo, 91 S.W.3d 41, 51 (Tex. App.—Amarillo 2002, pet.
denied)).  It involves consideration of what a plaintiff's capacity to earn a
livelihood actually was and evaluates the extent to which it was impaired.  Id.  Loss of past earning capacity is the plaintiff's diminished capacity to earn a
living during the period between the injury and the date of trial.  Id. (citing Strauss v. Continental Airlines, Inc., 67 S.W.3d 428, 435 (Tex. App.—Houston [1st Dist.] 2002, no pet.)).  To support such a claim, the plaintiff must
introduce evidence from which a jury may reasonably measure in monetary terms
his earning capacity prior to injury.  Id.  If the plaintiff's earning
capacity is not totally destroyed, but only impaired, the extent of his loss
can best be shown by comparing his actual earnings before and after his
injury.  Id.  See also McIver v. Gloria, 169 S.W.2d 710, 712
(1943).  To determine whether evidence is sufficient, there is no general rule,
and each case must be judged on its particular facts.  McIver, 169
S.W.2d at 712.

            Fuentes’s former employer,
George Cross, testified that Fuentes had been working for him as a lead
insulation installer for almost nine months when the accident occurred.  At the
time of the accident, Fuentes was being paid $11 per hour and had been
guaranteed $250 per week in case there was a slow down in business.  Fuentes
introduced records of his hours worked, gross pay, and net pay for the time
that he worked with Cross.  It had been over seven years between the time of
the accident and the trial.  The jury awarded Fuentes $75,000 in loss of
earning capacity in the past.  

            The City argues that the
evidence is factually insufficient to support the award because Fuentes was
released to return to work in a sedentary job but has not tried to find any
sedentary work.  The City has not cited us to any authority, and we have found
none, for the proposition that the plaintiff’s ability to return to work is
considered when assessing and reviewing loss of earning capacity in the past. 
Further, this evidence was before the jury for its consideration and evaluation
of the weight, if any, to give it in determining Fuentes’s damages.

            Based on the evidence in the
record, the amount awarded by the jury is not so contrary to the overwhelming
weight of the evidence that the award is clearly wrong and unjust.  This
portion of the City’s argument is overruled.

Lost Earning Capacity in the Future   

            Loss of future earning
capacity is the plaintiff's diminished capacity to earn a living after trial.  Bituminous
Cas. Corp. v. Cleveland, 223 S.W.3d 485, 491 (Tex. App.—Amarillo 2006, no
pet.); Plainview Motels, Inc. v. Reynolds, 127 S.W.3d 21, 35 (Tex.
App.—Tyler 2003, pet. denied).  Because the amount of money a plaintiff might
earn in the future is always uncertain, the jury has considerable discretion in
determining this amount.  Id.  

            The City argues that the
evidence is legally insufficient to support the jury’s award of $35,000 for
lost earning capacity in the future because Fuentes failed to introduce any
evidence of what his earning capacity in the future would be.

            To support an award of
damages for loss of future earning capacity, the plaintiff must introduce
evidence sufficient to allow the jury to reasonably measure earning capacity in
monetary terms. Plainview Motels, Inc. v. Reynolds, 127 S.W.3d 21, 35-36
(Tex. App.—Tyler 2003, pet. denied).  The plaintiff does not have to show
actual earnings, life expectancy, or even the plaintiff's employment at the
time of the injury.  Id. at 36.  An award of damages for loss of future
earning capacity can be based on a composite of factors that may affect a
person's capacity to earn a living.  Id.  To support an award of damages
for loss of future earning capacity, the plaintiff can introduce evidence of
past earnings; the plaintiff's stamina, efficiency, and ability to work with
pain; the weaknesses and degenerative changes that will naturally result from
the plaintiff's injury; and the plaintiff's work-life expectancy.  Id.  There must be some evidence that the plaintiff had the capacity to work prior
to the injury, and that his capacity was impaired as a result of the injury.  Id.

            As previously stated, with
regard to Fuentes’s evidence of the capacity to work prior to the injury,
Fuentes’s former employer testified that Fuentes had been working for him as a
lead insulation installer for almost 9 months when the accident occurred.  At
the time of the accident, Fuentes was being paid $11 per hour and had been
guaranteed $250 per week in case there was a slow down in business.  Fuentes
introduced records of his hours worked, gross pay, and net pay for the time
that he worked.  

            Dr. Richard Scott examined
Fuentes at the request of the City for a disability rating.  He believed that
Fuentes 

            … could work up to five to
six hours a day.  He could sit for four hours a day at 45-minute durations.  He
could stand and walk three to four hours with frequent breaks.  He could not
perform any bending, stooping or crouching.  He could perform squatting,
crawling, stair climbing, kneeling and balancing less that two-and-a-half hours
a day.  He can lift less than 12-pounds, carrying less than 17 pounds and
pushing and pulling less than 35 pounds less than two-and-a-half hours a day.

 

Dr. Scott determined that Fuentes would
need a sedentary job.  Dr. Riggs testified that he knew of no job that was
available that Fuentes would be qualified for based on Fuentes’s physical
limitations, education, and employment history.  Fuentes testified that he had
not looked for a job because he believed no one would hire him.  

            As noted previously, the
jury awarded Fuentes $75,000 for lost earning capacity in the past.  The jury
reduced that amount by almost half to award Fuentes $35,000 for lost earning
capacity in the future.  Reviewing the evidence under the appropriate
standards, we find the evidence supporting the jury’s award to be legally
sufficient.  This portion of the City’s argument is overruled.

            The City also contends that
the evidence to support the jury’s award of $35,000 in damages for lost earning
capacity in the future is factually insufficient because there was insufficient
evidence that the neck or back injury was proximately caused by the accident or
that the damages were proximately caused by the accident.  We have already
decided that the evidence was legally and factually sufficient to show that
Fuentes’s neck and back injuries were proximately caused by the accident.  This
portion of the City’s argument is overruled. 

            Physical Impairment
Sustained in the Past and in the Future

            The City contends that the
evidence to support the jury’s award of $50,000 in damages for physical
impairment in the past is factually insufficient because there was insufficient
evidence that the neck or back injury was proximately caused by the accident or
that the damages were proximately caused by the accident.  We have already
decided that the evidence was legally and factually sufficient to show that
Fuentes’s neck and back injuries were proximately caused by the accident.  This
portion of the City’s argument is overruled. 

            The City also contends that
the evidence to support the jury’s award of $35,000 in damages for physical
impairment in the future is both legally and factually insufficient because
there was no evidence or insufficient evidence that the neck or back injury was
proximately caused by the accident or that the damages were proximately caused
by the accident.  We have already decided that the evidence was legally and
factually sufficient to show that Fuentes’s neck and back injuries were
proximately caused by the accident.  This portion of the City’s argument is
overruled. 

Past Medical Expenses

            To recover damages, the
burden is on the plaintiff to produce evidence from which the jury may
reasonably infer that the damages claimed resulted from the defendant's
conduct.  Texarkana Mem. Hosp. v. Murdock, 946 S.W.2d 836, 838 (Tex. 1997).  Proving that the event sued upon caused the plaintiff's alleged injuries is
part and parcel of proving the amount of damages to which the plaintiff is
entitled.  Guevara v. Ferrer, 247 S.W.3d 662, 666 (Tex. 2007).  The
causal nexus between the event sued upon and the plaintiff's injuries must be
shown by competent evidence.  Id.  A plaintiff satisfies this causal
link requirement when it presents the jury with proof that establishes a direct
causal connection between the damages awarded, the defendant's actions, and the
injury suffered.  Texarkana Mem. Hosp., 946 S.W.2d at 838.  A
plaintiff may recover only for those injuries caused by the event made the
basis of suit.  Id. at 839-840.  

            Absent expert proof of the
conditions and their causes, judgment for the expense of treatment is not
supported by legally sufficient evidence.  Guevara v. Ferrer, 247 S.W.3d
662, 669 (Tex. 2007).  Affidavits proving up the medical bills are evidence
that expenses were reasonable in amount and necessary for treatment of a
plaintiff’s conditions, but the bills are not evidence of what all the
conditions were or that all the conditions were caused by the accident.  Id.

            A.  Hillcrest X-Ray
Physicians

            The jury awarded $4,233 in
past medical expenses incurred at Hillcrest X-Ray Physicians.  Several pages of
bills totaling $4,233 from Hillcrest X-Ray Physicians were admitted into
evidence.  The City argues that there was legally insufficient evidence to
support the amount awarded because there was no expert testimony that the
specific conditions treated and the resulting expenses were caused by the
accident.  Dr. Hamilton testified about the bills from Hillcrest X-Ray
Physicians and stated that if, as Fuentes had stated, Fuentes had no problems
prior to the accident, then the cause of the problems was the accident and the
need for further treatment on his neck and back would be the result of the
accident.  Dr. Hamilton believed that everything he ordered was reasonable and
directed toward Fuentes’s complaints, those things which Dr. Hamilton knew
would help, and those things which Dr. Hamilton could see that were abnormal to
him.  He also testified that the x-rays and MRIs ordered by Dr. Riggs were
necessary for diagnosing the injuries suffered in the accident.

            Reviewing the evidence under
the appropriate standard, we believe there is legally sufficient evidence from
which the jury could reasonably infer that the damages claimed in the bills
from Hillcrest X-Ray Physicians resulted from the accident.

            B.  H. Bruce Hamilton,
M.D.

            The jury awarded Fuentes
$30,181 in past medical expenses incurred through H. Bruce Hamilton, M.D.  At
trial, Dr. Hamilton testified that $29,898 was the amount of treatment related
to the injuries suffered by Fuentes in the accident.  The City does not dispute
that $29,898 in damages was proved.  Rather, it argues that the jury’s award
should be reduced to $29,898.  Although we agree, in principle, the reduction
in the jury award for past medical expenses would not change the amount of the
judgment which was limited to the liability cap of $250,000.  

            C.  Other Damages
Challenged

            The City complains about the
jury’s determination of other elements of damages.  As with the reduction error
in connection with Dr. Hamilton’s expenses, we need not review the other
complaints as the judgment was capped at $250,000.

Conclusion

            Because we have overruled
the City’s attacks on an amount of damages exceeding the amount of the
judgment, we need not address the remainder of the City’s arguments.  Having
overruled the City’s issues necessary for a resolution of this appeal, we
affirm the judgment of the trial court.

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

Before
Chief Justice Gray,

            Justice
Davis, and

            Judge
Littlejohn[1]

Affirmed

Opinion
delivered and filed March 9, 2011

[CV06]









[1]
The Honorable Janet P. Littlejohn, Judge of the 150th District Court of Bexar County, sitting by assignment of the Chief Justice of the Texas Supreme Court
pursuant to section 74.003(h) of the Government Code.  See Tex. Gov't Code Ann. § 74.003(h) (West
2005).