

# IN THE
# TENTH COURT OF APPEALS

### No. 10-09-00126-CV

**THE CITY OF WACO,**

**Appellant**

 **v.**

**ARMANDO FUENTES, III,**

**Appellee**

**From the 414th District Court
McLennan County, Texas
Trial Court No. 2003-875-3**

## MEMORANDUM  OPINION

Armando Fuentes was involved in an accident with a City of Waco garbage truck.  The pickup Fuentes was driving was rear-ended by the City truck.  Fuentes suffered neck, back, and ankle injuries.  Fuentes sued the City after ultimately having back surgery with continued pain in his neck and back.  The jury awarded Fuentes almost $400,000 in damages.  The trial court reduced that amount to $250,000.  The City appeals.  Because we find the evidence sufficient to support $250,000 in damages and because we find the trial court did not err in admitting certain expert testimony, we affirm the judgment of the trial court.

**EXPERT TESTIMONY**

The City contends that the trial court erred in allowing Dr. Michael Riggs to testify as an expert on certain subjects about which Riggs was allegedly not qualified to testify.

Rule 702 of the Texas Rules of Evidence permits a witness qualified as an expert by knowledge, skill, experience, training, or education to testify on scientific, technical, or other specialized subjects if the testimony would assist the trier of fact in understanding the evidence or determining a fact issue. TEX. R. EVID. 702; *Gammill v. Jack Williams Chevrolet*, 972 S.W.2d 713, 718 (Tex. 1998). A two-part test governs whether expert testimony is admissible: (1) the expert must be qualified; and (2) the testimony must be relevant and be based on a reliable foundation. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 499 (Tex. 2001*); E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1995).

The trial court makes the initial determination about whether the expert and the proffered testimony meet the requirements of Rule 702. *Helena*, 47 S.W.3d at 499; *Robinson*, 923 S.W.2d at 556. The trial court also has broad discretion to determine admissibility, and we will reverse only if there is an abuse of that discretion. *Helena*, 47 S.W.3d at 499; *Robinson*, 923 S.W.2d at 558. In deciding if an expert is qualified, trial courts "must ensure that those who purport to be experts truly have expertise concerning the actual subject about which they are offering an opinion." *Gammill*, 972 S.W.2d at 719 (quoting *Broders v. Heise*, 924 S.W.2d 148, 152 (Tex. 1996)).

Prior to the trial on the merits, the City filed a motion to strike Riggs's testimony or, alternatively, to limit Riggs's testimony. The City argued in its motion that Riggs admitted he was not a neurosurgeon and thus, he lacked specialized knowledge and expertise to testify about causation between the accident and Fuentes's injuries. Riggs's testimony was to be submitted by video deposition. The trial court denied the City's motion except for certain excerpts of the deposition. Neither party complains about the deposition excerpts that were not allowed to be shown to the jury. On appeal, the City challenges Dr. Riggs's qualification as an expert to offer opinion testimony as an accident reconstruction expert or to offer opinion testimony that the accident caused Fuentes's injury.

The first challenge, that Riggs was not qualified to offer opinion testimony as an accident reconstruction expert, was not presented to the trial court in either the City's motion to strike or in its argument at the pre-trial hearing regarding the City's motion. Because the trial court did not have an opportunity to consider this challenge, the City cannot now raise it on appeal. Accordingly, this particular challenge on appeal is not preserved for our review. *See* TEX. R. APP. P. 33.1.

As to the second challenge, that Riggs was not qualified to offer opinion testimony that the accident caused Fuentes's injury, it is unclear from the record what the trial court reviewed to determine Riggs's qualifications. At the hearing on the motion to strike, the following exchange took place between the court and counsel for the parties.

THE COURT: Number 1, do we have a complete –

MR. OATES:  Yes

THE COURT:  -- copy of Dr. Riggs' –

MR. LEE:  Would you like a copy?

THE COURT:  -- deposition?  I think y'all are probably going to have to leave it with me, so I can read –

MR. OATES:  This can be your personal copy, Your Honor.

THE COURT:  --what it is y'all are objecting to.

And you're wanting to offer the entirety of Dr. Riggs deposition, Mr. Lee?

MR. LEE:  No.  No, Your Honor.  And I can give you –

MR. OATES:  Basically, the first 75, 76 pages.

MR. LEE:  -- I can give you the – I can give you the – I took – I copied and pasted the parts that I want to offer.  I can give you a copy of that.  I have actually got some highlights on it, maybe if –

MR. OATES:  He took out all of my objections, so it's a little bit difficult to read his version.

MR. LEE:  If you like, I can make a clean copy of this and provide it to you that will show you separately.  But –

THE COURT:  Well have you given your page/lines to Mr. Oates?  And can you not just give me that?

MR. LEE:  The way I did it is, I gave him a – I did exactly like what we have here.  I copied and -- I copied and pasted the testimony, the question and answer, instead of typing Page 1, Line whatever.  You know, it's easier, I think, on Mr. Oates to go back and just read what I'm offering instead of having to look at page and line and go back and forth, so … and that's why.  And you're more than welcome to have this copy, if you want – if you don't mind.  Just my highlights – or I can take this to a copier and make a copy that doesn't have my highlights on it.  That will have – so you can have my page and line.

THE COURT:  Well, I need to know what it is that you're proposing to offer and what it is you're objecting to.  So I think I have your objections.  Do you have page/line objections?

MR. LEE:  To Dr. Riggs?

THE COURT:  To Dr. Riggs?

MR. OATES:  I got this this morning, Your Honor.  I got Riggs at 8:40 this morning.  So I have my handwritten objections and I can certainly provide that.  But it's – there's a lot of objections, Your Honor.  I'm sorry.  But he asked a lot of leading questions that were improper and a lot of form and a lot of non-responsive answers by Dr. Riggs.  I object very little through the first 19 – 17 pages.  And then he starts jumping into the – all the causation and opinion testimony that Dr. Riggs is not qualified to give.  And that's when –

MR. LEE:  Whatever your preference is, Your Honor.  I mean, I can, you know –

THE COURT:  I don't care if it's highlighted.  Mr. Oates may care if it's highlighted.  I don't care if it's highlighted.

MR. OATES:  It doesn't bother me, Your Honor.

MR. LEE:  I don't know how long you're gonna be here.  I can run across the street to Mr. Layman's office and make a copy, if the highlights won't come out.

THE COURT:  And I'm sure –

MR. LEE:  Or I can go through and read you the page and line if you want to just write down the page and line.

THE COURT:  Mr. Oates, do you care if I have his highlighted copy?

MR. OATES:  I do not care, Your Honor.  Whatever is the easiest on the Court, I am all for that.

***

THE COURT: All right. Like I say, I'm going to have to read Dr. Riggs' deposition. So y'all are going to have to – if there's anything else you want to say about Dr. Riggs, say it now. And then I'll – I'll rule in letter form, probably, once I have reviewed it.

MR. OATES: I would just stay this, Your Honor. If the Court gives us instruction as to what Dr. Riggs can opine on and cannot opine on, I think Mr. Lee and I can probably go through and decide on most of the stuff. And so – but, you know, we'll certainly do whatever the Court wants us to do on that.

THE COURT: Like I say, without reading his deposition, he can certainly talk about his visits with Mr. Fuentes. He, like I say, can talk about whatever he saw on x-ray, if he reviewed the ex-rays. He can talk about that. Where I'm going to have a problem with Dr. Riggs is if he's trying to talk about anything related to neurosurgery. *And since I don't know exactly what he said and what it is y'all are – I can't rule on it without reading it*. (emphasis added).

After reviewing what was submitted by the parties, the trial court denied the City's motion to strike or limit Riggs's testimony except for certain excerpts of the deposition. From the above exchange, we as well cannot "rule on it without reading it." We cannot determine whether the trial court abused its discretion because we do not have before us the evidence the trial court considered in making its ruling on the motion. Did the trial court consider only parts of the deposition? What parts were considered? Did the trial court consider the entire deposition including Riggs's curriculum vitae? We do not know. We also have no knowledge of the content of the City's handwritten objections which the trial court considered as well before making its ruling. Nothing was admitted into evidence for the purpose of the hearing that would show us exactly what the court considered. We questioned our ability to review this issue in an order for referral to mediation; however, the City specifically informed us

after mediation was unsuccessful that no clarification regarding what the trial court reviewed was necessary.

An appellant cannot prevail in any evidentiary challenge without first meeting his burden of presenting a sufficient record on appeal. *Nicholson v. Fifth Third Bank*, 226 S.W.3d 581, 583 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Because the record is insufficient as to what the trial court reviewed in making its ruling, we cannot say that the court abused its discretion in denying the City's motion to strike or limit Riggs's testimony, essentially finding Riggs qualified to offer opinion testimony that the accident caused Fuentes's injury. This issue is overruled.

## LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE

The remainder of the City's issues relate to whether certain evidence was either legally or factually insufficient to support the jury's verdict.

In conducting a legal sufficiency review, we view the evidence in the light most favorable to the verdict, credit favorable evidence if a reasonable juror could, and disregard contrary evidence unless a reasonable juror could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005). A legal sufficiency issue will be sustained if the record reveals one of the following: (1) the complete absence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence established conclusively the opposite of the vital fact. *Id*. at 827.

When considering a factual sufficiency challenge to a jury's verdict, as the reviewing court, we must consider and weigh all of the evidence, not just that evidence which supports the verdict. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406-407 (Tex. 1998). We can set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. *Id*. at 407. We are not a fact finder; accordingly, we may not pass upon the witnesses' credibility or substitute our judgment for that of the jury, even if the evidence would clearly support a different result. *Id*. In reviewing a challenge that an award for a category of damages is excessive because there is factually insufficient evidence to support it, we should consider all the evidence that bears on that category of damages, even if the evidence also relates to another category of damages. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 773 (Tex. 2003). To do otherwise would mean that evidence that reasonably could have supported the jury's award would not be considered, which would be improper.

*Causation*

The City contends the evidence of causation was both legally and factually insufficient to support the verdict. Specifically, the City argues that there is no evidence of causation between the accident and Fuentes's injuries to his back and neck. The City also argues that the evidence that Fuentes suffered back and neck injuries as a result of the accident is so weak and evidence to the contrary is so overwhelming that the jury's award of damages was manifestly wrong and unjust. The City does not dispute the sufficiency of the evidence regarding the causation of the injury to Fuentes's ankle.

To constitute evidence of causation, an expert opinion must rest in reasonable medical probability. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 500 (Tex. 1995) (citing *Insurance Co. of North Am. v. Myers*, 411 S.W.2d 710, 713 (Tex. 1966)). Expert testimony that is not based on a reasonable medical probability, but that instead relies on possibility, speculation, or surmise, does not assist the trier of fact and cannot support a judgment. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 712 (Tex. 1997); *City of Laredo v. Garza*, 293 S.W.3d 625, 629 (Tex. App.—San Antonio 2009, no pet.). Reasonable probability is determined by the substance and context of the opinion, and does not turn on semantics or on the use of a particular term or phrase. *Burroghs*, 907 S.W.2d at 500; *Myers*, 411 S.W.2d at 713.

The City's sole argument regarding the evidence of causation between the accident and the injury to Fuentes's back is that Riggs was the only doctor to testify that the accident caused the slippage in Fuentes's lumbar spine and that Riggs was not qualified to give such an opinion. The determination of this part of the issue is dependent upon a favorable determination of the City's issue regarding Riggs's qualification to testify. Because we found the trial court did not abuse its discretion in finding Riggs qualified, Riggs's testimony will be considered in our review. Not only did Riggs testify that the accident caused the injury to Fuentes's back, he also testified that the accident caused Fuentes's neck injury and the injury to Fuentes's ankle. Dr. Ellis, an orthopedic surgeon, also testified that Fuentes injured his ankle in the accident.

Dr. Hamilton, a neurosurgeon, testified that Fuentes had a disc bulge in his neck that could have been caused by either a degenerative process or traumatic events.

Although Hamilton said that he could not state within a reasonable medical probability that the disc bulge in Fuentes's neck was caused by the accident because he had no images of Fuentes's neck before the accident, he stated that he had to base his beliefs on what the patient reports and Fuentes reported that he had no neck problems prior to the accident. Hamilton believed that what Fuentes told him, in essence that he had no neck problems prior to the accident, was consistent with the injury being caused by trauma from a motor vehicle accident. Hamilton also testified that Fuentes had both a boney defect, or spondylolysis, and bone slippage, or spondylolitheis, in his lower back. Hamilton believed the defect was congenital but had no way of determining whether the slippage was degenerative or due to a traumatic event such as the accident because he had no x-rays of Fuentes's lower back before the accident. However, Hamilton stated that if Fuentes had no symptoms or problems with his back prior to the accident, then he believed the accident caused the current problem. Fuentes reported to Hamilton that he had no back or neck problems prior to the accident. He also testified at trial that he had no prior problems except for a time when he thought he had the flu and his back hurt. He stated that when the flu went away, the pain went away.

The City's expert, Dr. Desaloms, stated that he did not see anything on the MRI of Fuentes's spine that looked like it was caused by trauma. Further, to him, a disc bulge typically was not something that would be caused by trauma. Desaloms also stated there was no medical evidence that Fuentes had a neck injury from the accident. He did testify, however, that Fuentes's decreased range of motion in his neck was caused by the accident.

Reviewing the evidence under the appropriate standards, we cannot say that the evidence of causation was no more than a scintilla of evidence nor can we say that the evidence is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. Accordingly we find the evidence of causation to be legally and factually sufficient to support the verdict.

*Future Physical Pain and Mental Anguish—Legal Sufficiency*

The City challenges the legal sufficiency of the evidence supporting the jury's award of $50,000 for future physical pain and mental anguish. Neither the charge nor the jury's answer distinguishes between these categories of damages. There was no objection to the joinder of physical pain and mental anguish in the charge. Therefore, the *Casteel* and *Harris County* cases are not implicated in this issue. *See Harris County v. Smith*, 96 S.W.3d 230 (Tex. 2002); *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378 (Tex. 2000).

*Physical Pain*

The evidence to support a claim for future physical pain must show a reasonable probability of the occurrence of future ill effects of the injury. *Port Terminal R. Asso. v. Ross*, 289 S.W.2d 220, 228 (Tex. 1956). In this case, Dr. Hamilton testified that Fuentes would never be pain free. Dr. Riggs testified that Fuentes would likely have pain continuously for the foreseeable future, at least 15 to 20 years. Fuentes said the surgery took away some of his pain but the pain is still there. Fuentes also stated that Dr. Hamilton told him he would never be the same individual as before.

After reviewing the evidence under the appropriate standard, we believe it to be legally sufficient to support damages for future physical pain. Accordingly, this portion of the City's arguments is overruled.

*Mental Anguish*

Mental anguish damages cannot be awarded without either direct evidence of the nature, duration, or severity of the anguish, thus establishing a substantial disruption in the plaintiff's daily routine, or other evidence of a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger. *Saenz v. Fidelity & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996) (quoting *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995)) (internal quotation marks omitted).

The City contends the evidence of future mental anguish is legally insufficient because there is no evidence that Fuentes's neck or back injury was proximately caused by accident. We have already decided that the evidence was legally sufficient to show that Fuentes's neck and back injuries were proximately caused by the accident. This portion of the City's argument is overruled.

**Past and Future Physical Pain and Mental Anguish—Factual Sufficiency**

The City challenges the factual sufficiency of the evidence supporting the jury's award of $75,000 in damages for past physical pain and mental anguish and $50,000 for future physical pain and mental anguish. Again, neither the charge nor the jury's answer distinguishes between physical pain and mental anguish in either the past or future category. Again there was no objection to the joinder of physical pain and

mental anguish in the charge. Therefore, the *Casteel* and *Harris County* cases are, likewise, not implicated in this issue. *See Harris County v. Smith*, 96 S.W.3d 230 (Tex. 2002); *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378 (Tex. 2000).

*Physical Pain*

The City contends the evidence supporting the amount of damages associated with past and future physical pain is factually insufficient only because it believes the evidence of causation as to Fuentes's neck and back injuries was factually insufficient. Thus, its argument continues, an award of $75,000 for past physical pain and $50,000 for future physical pain for Fuentes's neck injury is too much. We have held that the evidence of causation for all of Fuentes's injuries was both legally and factually sufficient. The City presents no other reason why the evidence supporting this damage award as to past and future physical pain is factually insufficient.

Accordingly, these portions of the City's arguments are overruled.

*Mental Anguish*

The City also contends the evidence of future mental anguish is factually insufficient because there is no evidence that Fuentes's neck or back injury was proximately caused by the accidence and because there is factually insufficient evidence that the damages were proximately caused by the accident. We have already decided that the evidence was legally and factually sufficient to show that Fuentes's neck and back injuries were proximately caused by the accident. Further, the City presents no argument in support of its claim that there is factually insufficient evidence that the

damages were proximately caused by the accident. This portion of the City's argument is overruled.

The City further contends the evidence of past mental anguish is factually insufficient because the evidence does not meet the level of a high degree of mental pain and distress caused by the accident. Because of our review of the factual sufficiency of past and physical pain, we need not reach a review of past mental anguish.

A determination of damages for pain and how much to award is uniquely within the province of the jury, *see Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 772 (Tex. 2003), and the record contains ample evidence to support that Fuentes was injured and endured pain and suffering as a proximate cause of the accident. The jury could have awarded the entire $75,000 for past physical pain and none for past mental anguish. Accordingly, this portion of the City's argument is overruled.

### *Lost Earning Capacity in the Past*

Loss of earning capacity is the plaintiff's diminished capacity to earn a living. *Bituminous Cas. Corp. v. Cleveland*, 223 S.W.3d 485, 491 (Tex. App.—Amarillo 2006, no pet.) (citing *Koko Motel v. Mayo*, 91 S.W.3d 41, 51 (Tex. App.—Amarillo 2002, pet. denied)). It involves consideration of what a plaintiff's capacity to earn a livelihood actually was and evaluates the extent to which it was impaired. *Id*. Loss of past earning capacity is the plaintiff's diminished capacity to earn a living during the period between the injury and the date of trial. *Id*. (citing *Strauss v. Continental Airlines, Inc.*, 67 S.W.3d 428, 435 (Tex. App.—Houston [1st Dist.] 2002, no pet.)). To support such a claim, the

plaintiff must introduce evidence from which a jury may reasonably measure in monetary terms his earning capacity prior to injury. *Id*. If the plaintiff's earning capacity is not totally destroyed, but only impaired, the extent of his loss can best be shown by comparing his actual earnings before and after his injury. *Id*. *See also McIver v. Gloria*, 169 S.W.2d 710, 712 (1943). To determine whether evidence is sufficient, there is no general rule, and each case must be judged on its particular facts. *McIver*, 169 S.W.2d at 712.

Fuentes's former employer, George Cross, testified that Fuentes had been working for him as a lead insulation installer for almost nine months when the accident occurred. At the time of the accident, Fuentes was being paid $11 per hour and had been guaranteed $250 per week in case there was a slow down in business. Fuentes introduced records of his hours worked, gross pay, and net pay for the time that he worked with Cross. It had been over seven years between the time of the accident and the trial. The jury awarded Fuentes $75,000 in loss of earning capacity in the past.

The City argues that the evidence is factually insufficient to support the award because Fuentes was released to return to work in a sedentary job but has not tried to find any sedentary work. The City has not cited us to any authority, and we have found none, for the proposition that the plaintiff's ability to return to work is considered when assessing and reviewing loss of earning capacity in the past. Further, this evidence was before the jury for its consideration and evaluation of the weight, if any, to give it in determining Fuentes's damages.

Based on the evidence in the record, the amount awarded by the jury is not so contrary to the overwhelming weight of the evidence that the award is clearly wrong and unjust. This portion of the City's argument is overruled.

*Lost Earning Capacity in the Future*

Loss of future earning capacity is the plaintiff's diminished capacity to earn a living after trial. *Bituminous Cas. Corp. v. Cleveland*, 223 S.W.3d 485, 491 (Tex. App.—Amarillo 2006, no pet.); *Plainview Motels, Inc. v. Reynolds*, 127 S.W.3d 21, 35 (Tex. App.—Tyler 2003, pet. denied). Because the amount of money a plaintiff might earn in the future is always uncertain, the jury has considerable discretion in determining this amount. *Id*.

The City argues that the evidence is legally insufficient to support the jury's award of $35,000 for lost earning capacity in the future because Fuentes failed to introduce any evidence of what his earning capacity in the future would be.

To support an award of damages for loss of future earning capacity, the plaintiff must introduce evidence sufficient to allow the jury to reasonably measure earning capacity in monetary terms. *Plainview Motels, Inc. v. Reynolds*, 127 S.W.3d 21, 35-36 (Tex. App.—Tyler 2003, pet. denied). The plaintiff does not have to show actual earnings, life expectancy, or even the plaintiff's employment at the time of the injury. *Id*. at 36. An award of damages for loss of future earning capacity can be based on a composite of factors that may affect a person's capacity to earn a living. *Id*. To support an award of damages for loss of future earning capacity, the plaintiff can introduce evidence of past earnings; the plaintiff's stamina, efficiency, and ability to work with pain; the

weaknesses and degenerative changes that will naturally result from the plaintiff's injury; and the plaintiff's work-life expectancy. *Id*. There must be some evidence that the plaintiff had the capacity to work prior to the injury, and that his capacity was impaired as a result of the injury. *Id*.

As previously stated, with regard to Fuentes's evidence of the capacity to work prior to the injury, Fuentes's former employer testified that Fuentes had been working for him as a lead insulation installer for almost 9 months when the accident occurred. At the time of the accident, Fuentes was being paid $11 per hour and had been guaranteed $250 per week in case there was a slow down in business. Fuentes introduced records of his hours worked, gross pay, and net pay for the time that he worked.

Dr. Richard Scott examined Fuentes at the request of the City for a disability rating. He believed that Fuentes

> … could work up to five to six hours a day. He could sit for four hours a day at 45-minute durations. He could stand and walk three to four hours with frequent breaks. He could not perform any bending, stooping or crouching. He could perform squatting, crawling, stair climbing, kneeling and balancing less that two-and-a-half hours a day. He can lift less than 12-pounds, carrying less than 17 pounds and pushing and pulling less than 35 pounds less than two-and-a-half hours a day.

Dr. Scott determined that Fuentes would need a sedentary job. Dr. Riggs testified that he knew of no job that was available that Fuentes would be qualified for based on Fuentes's physical limitations, education, and employment history. Fuentes testified that he had not looked for a job because he believed no one would hire him.

As noted previously, the jury awarded Fuentes $75,000 for lost earning capacity in the past. The jury reduced that amount by almost half to award Fuentes $35,000 for lost earning capacity in the future. Reviewing the evidence under the appropriate standards, we find the evidence supporting the jury's award to be legally sufficient. This portion of the City's argument is overruled.

The City also contends that the evidence to support the jury's award of $35,000 in damages for lost earning capacity in the future is factually insufficient because there was insufficient evidence that the neck or back injury was proximately caused by the accident or that the damages were proximately caused by the accident. We have already decided that the evidence was legally and factually sufficient to show that Fuentes's neck and back injuries were proximately caused by the accident. This portion of the City's argument is overruled.

### Physical Impairment Sustained in the Past and in the Future

The City contends that the evidence to support the jury's award of $50,000 in damages for physical impairment in the past is factually insufficient because there was insufficient evidence that the neck or back injury was proximately caused by the accident or that the damages were proximately caused by the accident. We have already decided that the evidence was legally and factually sufficient to show that Fuentes's neck and back injuries were proximately caused by the accident. This portion of the City's argument is overruled.

The City also contends that the evidence to support the jury's award of $35,000 in damages for physical impairment in the future is both legally and factually insufficient

because there was no evidence or insufficient evidence that the neck or back injury was proximately caused by the accident or that the damages were proximately caused by the accident. We have already decided that the evidence was legally and factually sufficient to show that Fuentes's neck and back injuries were proximately caused by the accident. This portion of the City's argument is overruled.

*Past Medical Expenses*

To recover damages, the burden is on the plaintiff to produce evidence from which the jury may reasonably infer that the damages claimed resulted from the defendant's conduct. *Texarkana Mem. Hosp. v. Murdock*, 946 S.W.2d 836, 838 (Tex. 1997). Proving that the event sued upon caused the plaintiff's alleged injuries is part and parcel of proving the amount of damages to which the plaintiff is entitled. *Guevara v. Ferrer*, 247 S.W.3d 662, 666 (Tex. 2007). The causal nexus between the event sued upon and the plaintiff's injuries must be shown by competent evidence. *Id*. A plaintiff satisfies this causal link requirement when it presents the jury with proof that establishes a direct causal connection between the damages awarded, the defendant's actions, and the injury suffered. *Texarkana Mem. Hosp.*, 946 S.W.2d at 838. A plaintiff may recover only for those injuries caused by the event made the basis of suit. *Id*. at 839-840.

Absent expert proof of the conditions and their causes, judgment for the expense of treatment is not supported by legally sufficient evidence. *Guevara v. Ferrer*, 247 S.W.3d 662, 669 (Tex. 2007). Affidavits proving up the medical bills are evidence that expenses were reasonable in amount and necessary for treatment of a plaintiff's

conditions, but the bills are not evidence of what all the conditions were or that all the conditions were caused by the accident. *Id.*

### A. Hillcrest X-Ray Physicians

The jury awarded $4,233 in past medical expenses incurred at Hillcrest X-Ray Physicians. Several pages of bills totaling $4,233 from Hillcrest X-Ray Physicians were admitted into evidence. The City argues that there was legally insufficient evidence to support the amount awarded because there was no expert testimony that the specific conditions treated and the resulting expenses were caused by the accident. Dr. Hamilton testified about the bills from Hillcrest X-Ray Physicians and stated that if, as Fuentes had stated, Fuentes had no problems prior to the accident, then the cause of the problems was the accident and the need for further treatment on his neck and back would be the result of the accident. Dr. Hamilton believed that everything he ordered was reasonable and directed toward Fuentes's complaints, those things which Dr. Hamilton knew would help, and those things which Dr. Hamilton could see that were abnormal to him. He also testified that the x-rays and MRIs ordered by Dr. Riggs were necessary for diagnosing the injuries suffered in the accident.

Reviewing the evidence under the appropriate standard, we believe there is legally sufficient evidence from which the jury could reasonably infer that the damages claimed in the bills from Hillcrest X-Ray Physicians resulted from the accident.

### B. H. Bruce Hamilton, M.D.

The jury awarded Fuentes $30,181 in past medical expenses incurred through H. Bruce Hamilton, M.D. At trial, Dr. Hamilton testified that $29,898 was the amount of

treatment related to the injuries suffered by Fuentes in the accident. The City does not dispute that $29,898 in damages was proved. Rather, it argues that the jury's award should be reduced to $29,898. Although we agree, in principle, the reduction in the jury award for past medical expenses would not change the amount of the judgment which was limited to the liability cap of $250,000.

C. *Other Damages Challenged*

The City complains about the jury's determination of other elements of damages. As with the reduction error in connection with Dr. Hamilton's expenses, we need not review the other complaints as the judgment was capped at $250,000.

CONCLUSION

Because we have overruled the City's attacks on an amount of damages exceeding the amount of the judgment, we need not address the remainder of the City's arguments. Having overruled the City's issues necessary for a resolution of this appeal, we affirm the judgment of the trial court.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
        Justice Davis, and
        Judge Littlejohn[1]
Affirmed
Opinion delivered and filed March 9, 2011
[CV06]

---

[1] The Honorable Janet P. Littlejohn, Judge of the 150th District Court of Bexar County, sitting by assignment of the Chief Justice of the Texas Supreme Court pursuant to section 74.003(h) of the Government Code. *See* TEX. GOV'T CODE ANN. § 74.003(h) (West 2005).