NO. 07-05-0235-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

MAY 24, 2006

_____


BITUMINOUS CASUALTY CORPORATION, APPELLANT

V.

MONA CLEVELAND, APPELLEE

_____

FROM THE 237TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2003-523,220; HONORABLE SAM MEDINA, JUDGE

_____

Before REAVIS and HANCOCK, JJ. and BOYD, S.J.[1]


**OPINION**


Appealing from a judgment based upon a jury verdict that appellee Mona Cleveland recover $816,493.69 on her underinsured motorist claim, appellant Bituminous Casualty Corporation presents eight issues. Bituminous contends:

---

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

(1) a "treating" physician who is provided information and paid by counsel for reviewing such information in advance of testifying at trial when called by counsel a is "retained" expert;

(2) the trial court erred in admitting medical testimony of causation by the "treating" expert who changed his opinion after Cleveland's counsel provided the designated "treating" physician additional information and records from other treating physicians and the deposition and expert report of Bituminous's retained expert witness and was paid $5,000;

(3) does Texas Rule of Civil Procedure 193.6 require exclusion of evidence when the offering party knew that the opinion of the witness had materially changed, requiring discovery supplementation such that the change in the testimony at trial that would not constitute a surprise?

(4) did the trial court err in denying Bituminous's motion for mistrial, based on Dr. George's changed but undisclosed expert opinions being offered?

(5) did the trial court abuse its discretion in admitting medical bills under affidavit when the same were not filed timely in accordance with Chapter 18, Civil Practice & Remedies Code?

(6) is there any legally or factually sufficient evidence to support the jury's verdict after Dr. George's testimony is properly stricken from the record?

(7) did the trial court err in submitting a jury issue on future medical when there was no evidence that plaintiff would, in reasonable medical probability, require future medical treatment for injuries alleged proximately caused by the accident of April 26, 2003, and when there was no evidence about the amount any future medical treatment would cost? and

(8) did the trial court err in submitting a jury issue on future lost wages when the only testimony about past and future earnings was offered by plaintiff, and when Bituminous's objection to that testimony was sustained?

On April 26, 2003, while driving a pickup and towing a horse trailer, Cleveland was injured when an automobile driven by Paul Aguilar struck the rear-end of the trailer.[2]

---

[2]Aguilar's vehicle was insured for liability limits of $20,000 and the vehicle and horse trailer were insured by Bituminous up to $1,000,000 UM/UIM limits. Cleveland recovered

Following receipt of the jury verdict awarding $999,000, pursuant to section 41.0105 of the Texas Civil Practice and Remedies Code, finding that Cleveland did not pay all the medical expenses, the trial court reduced the award by $139,531.68, and making other deductions, rendered judgment that Cleveland recover $816,493.69.

Since several of the issues and contentions presented by Bituminous will be reviewed for abuse of discretion standard, we first note the appropriate standard for such review.

Standard of Review

Abuse of Discretion

A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). There is no abuse, however, simply because a trial court may decide a matter within its discretion differently than an appellate court. *Id.* at 242. When reviewing matters committed to the trial court's discretion, a court of appeals may not substitute its own judgment for that of the trial court, thus insulating the trial court's decision from appellate second guessing. *See* Flores v. Fourth Court of Appeals, 777 S.W.2d 38, 41 (Tex. 1989).

---

$20,000 on the policy limits and PIP claim and recovered $2,500 on her own PIP coverage.

Issues one, two, three, and four are presented by Bituminous under Topic I, entitled "Dr. George's Testimony Should have Been Excluded." We will consider the issues jointly.

Although Cleveland filed suit on August 4, 2003, the deposition of her treating physician, Dr. George, was not taken until November 2004. Among other things, during his deposition, when asked if in reasonable medical probability, any of his findings could have been caused by the accident of April 26, 2003, he answered, "No, sir." Further, he testified that Cleveland would have eventually required surgery for her back problems, even absent the accident of April 26, 2003. At trial, soon after counsel commenced his examination of Dr. George, it became apparent that Dr. George had changed his opinion. His deposition, however, had not been supplemented. This revelation prompted Bituminous's counsel to conduct *voir dire* examination, move for mistrial, and object to the testimony because the doctor's deposition had not been supplemented per Texas Rule of Civil Procedure 193.6. The course of events and rulings following the objection were somewhat similar to the events and issues presented in Koko Motel, Inc. v. Mayo, 91 S.W.3d 41, 49-51 (Tex.App.–Amarillo 2002, pet. denied), wherein we held the trial court did not err in denying a motion for mistrial and that an expert's failure to supplement discovery was not reversible error.

Here, after hearing arguments and objections from counsel for both parties, the trial court announced that, in its opinion, the doctor's deposition should have been supplemented. However, instead of granting a mistrial, the trial court, *sua sponte*,

declared a 24-hour recess and directed Cleveland's counsel to furnish to Bituminous's counsel the documents and records necessary to supplement the doctor's deposition.[3] Trial resumed at approximately 2:00 p.m. the following day.[4] Considering the issues presented by both parties and the posture of the case, because the doctor's deposition was supplemented during the trial recess, we need not address whether the treating physician became a retained expert for purposes of supplementation of discovery per Rules 193.6, 195.3, and 195.6 of the Texas Rules of Civil Procedure, or otherwise, when he reviewed records of other physicians and was paid $5,000 by Cleveland's counsel.

The trial court is vested with great discretion over the conduct of the trial, and this includes its intervention to "maintain control in the courtroom, to expedite the trial, and to prevent what it considers to be a waste of time." *See* Dow Chemical Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001). Further, we review the denial of a mistrial by an abuse of discretion standard. *See* Schlafly v. Schlafly, 33 S.W.3d 863, 868 (Tex.App.–Houston [14th Dist.] 2000, pet. denied). Similarly, the abuse of discretion standard applies in reviewing the ruling of the trial court regarding a discovery question. *See* Cire v. Cummings, 134 S.W.3d 835, 838-39 (Tex. 2004); *Downer*, 701 S.W.2d at 241. Considering that Dr.

---

[3]No error is assigned by either party to the recess ordered by the trial court.

[4]According to Bituminous's brief, recess was taken mid-afternoon and by the time Cleveland retrieved the documents from Dr. George's office and delivered copies to Bituminous, it was evening. Essentially, Bituminous had the next morning to review all the documents provided by Dr. George after his deposition.

George's deposition was supplemented during the recess, we conclude the trial court's action and denial of the motion for mistrial did not constitute an abuse of discretion.

Moreover, even though the deposition was not supplemented before trial, nevertheless, the documents and records were provided to counsel during the recess before Dr. George's cross-examination resumed. Even if the trial court erred in ordering supplementation of the records during recess and in denying Bituminous's motion for mistrial, under the record presented here, we conclude the action of the trial court was not such a denial of Bituminous's rights as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *See* Tex. R. App. P. 44.1. Accordingly, issues one, two, three, and four are overruled. Our disposition of these issues pretermits consideration of Bituminous's sixth issue.

By its seventh issue, Bituminous contends the evidence was legally insufficient to support the jury's award of $15,000 for future medical expenses. We disagree. When an appellant attacks the legal sufficiency of an adverse finding on which he did not have the burden of proof, we must review the entire record for any probative evidence which, when viewed in its most favorable light, supports the adverse finding. Lee Lewis Const., Inc. v. Harrison, 70 S.W.3d 778, 782 (Tex. 2001); Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co., 766 S.W.2d 264, 276 (Tex.App.–Amarillo 1988, writ denied). If there is more than a scintilla of evidence to support the verdict, we uphold the judgment. Lenz v. Lenz, 79

S.W.3d 10, 19 (Tex. 2002). We must disregard all evidence and inferences to the contrary. *Id.*

Texas follows the "reasonable probability" rule for future damages for personal injuries. Rosenboom Mach. & Tool, Inc. v. Machala, 995 S.W.2d 817, 828 (Tex.App.–Houston [1st Dist.] 1999, pet. denied); Hughett v. Dwyre, 624 S.W.2d 401, 405 (Tex.App.–Amarillo 1981, writ ref'd n.r.e.). Thus, in order to recover future medical expenses, a plaintiff is required to show there is a reasonable probability that medical expenses resulting from the injury will be incurred in the future and the reasonable costs of such care. *Rosenboom*, 995 S.W.2d at 828. It is within the jury's sound discretion to determine what amount, if any, to award in future medical expenses. Thate v. Texas & P. Ry. Co., 595 S.W.2d 591, 601 (Tex.Civ.App.--Dallas 1980, writ dism'd). This standard of review, however, is "not so nebulous that a reviewing court will uphold a jury award for future medical expenses when there is no evidence." Harvey v. Culpepper, 801 S.W. 2d 596, 599 (Tex.App.–Corpus Christi 1990, no writ).

Here, there was ample testimony by Dr. George regarding future medical expenses. Regarding Cleveland's condition, he testified "she is at a point where [her back] could easily fail" and "in all medical probability she is going to require further interventions in the future at higher levels in her spine." When asked specifically what to anticipate in terms of future medical care, Dr. George stated he would eventually need to extend the fusions on her spine and prefaced it by stating, "I don't think we're at the end of this." Regarding the costs

7

of such care, Dr. George explained the overall cost of a fusion procedure "can be very high" and "would be more expensive than her first surgery." Provided this testimony, we find there was more than a scintilla of evidence to support the jury's award for future medical expenses. Bituminous's seventh issue is overruled.

By its eighth issue, Bituminous contends the evidence was legally insufficient to support the jury's award of $35,000 for loss of earning capacity in the past and $35,000 for loss of earning capacity in the future. We disagree. Loss of earning capacity is the plaintiff's diminished capacity to earn a living. *Koko Motel*, 91 S.W.3d at 51. It entails consideration of what plaintiff's capacity to earn a livelihood actually was and assesses the extent to which it was impaired. *Id.* Loss of past earning capacity is the plaintiff's diminished capacity to earn a living during the period between the injury and the date of trial. *See* Strauss v. Continental Airlines, Inc., 67 S.W.3d 428, 435 (Tex.App.–Houston [1st Dist.] 2002, no pet.). In order to support such a claim, the plaintiff must introduce evidence from which a jury may reasonably measure in monetary terms his earning capacity prior to injury. *Id.* If the plaintiff's earning capacity is not totally destroyed, but only impaired, the extent of his loss can best be shown by comparing his actual earnings before and after his injury. *Id.* at 436. *See also* McIver v. Gloria, 140 Tex. 566, 169 S.W.2d 710, 712 (1943). In determining whether evidence is sufficient, there is no general rule, and each case must be judged on its particular facts. *McIver*, 169 S.W.2d at 712.

In the present case, Cleveland's claim for loss of past earning capacity was based on a 17-month period. Cleveland's testimony, summarized in Exhibit 49 and based on payroll records from her employer, suggest that during this period, Cleveland suffered approximately $45,042.65 in lost earnings. Under the appropriate standard of review, Cleveland was only required to present evidence from which a jury could determine earning capacity prior to the injury in monetary terms. *Strauss*, 67 S.W.3d at 435. We find the payroll records and Cleveland's testimony to be probative evidence in this regard and sufficient to allow the jury to reasonably conclude Cleveland's earning capacity in the past was diminished by the amount of $35,000.

Loss of future earning capacity is the plaintiff's diminished capacity to earn a living after trial. Plainview Motels, Inc. v. Reynolds, 127 S.W.3d 21, 35 (Tex.App.–Tyler 2003, pet. denied). Because the amount of money a plaintiff might earn in the future is always uncertain, the jury has considerable discretion in determining this amount. *Id*. To support an award for damages for loss of future earning capacity, the plaintiff must introduce evidence sufficient to allow the jury to reasonably measure earning capacity in monetary terms. *Id.* at 35-36.

Regarding future earning capacity, Cleveland was 36 years old at the time of trial and testified she expects to work to age 65. Dr. George testified regarding the extent of her injuries, the permanent restrictions on her daily activities, and her unfavorable prognosis for recovery. Cleveland also tendered detailed evidence of her employment and

9

earnings history, including expected bonuses.  We find all this testimony to be more than a scintilla of evidence and sufficient to allow the jury to reasonably conclude Cleveland's future earning capacity was diminished by the amount of $35,000.  Bituminous's eighth issue is overruled.

We conclude our review by considering Bituminous's fifth issue contending the trial court abused its discretion in admitting the medical bills under affidavit when the same were not timely filed in accordance with chapter 18 of the Texas Civil Practice and Remedies Code.  We agree.

In our analysis, we must first determine whether the error was preserved for our review and, if so, then determine whether the trial court committed error.  If we decide the trial court erred in admitting the evidence, we must decide whether the error was harmful.  In this regard, the evidence must demonstrate the error was calculated to cause and probably did cause the trial court to render an improper judgment.  *See* Tex. R. App. P. 44.1(b).  *See also* Natural Gas Clearinghouse v. Midgard Energy Co., 113 S.W.3d 400, 410 (Tex.App.--Amarillo 2003, pet. denied); Hasty, Inc. v. Inwood Buckthorn Joint Venture, 908 S.W.2d 494, 501 (Tex.App.--Dallas 1995, writ denied).

Proof of amounts charged or paid for medical services is not proof of reasonableness and will not support an award in the absence of evidence showing the charges were reasonable and necessary.  Rodriguez-Narrera v. Ridinger, 19 S.W.3d 531, 532 (Tex.App.--Fort Worth 2000, no pet.).  Ordinarily, expert testimony is required to

10

establish that charges by a medical provider for services were reasonable and necessary. *Id*. Where, as here, Cleveland seeks to recover for medical charges and services, the expense and inconvenience of securing the testimony of an expert to testify at trial to provide evidence can be avoided by providing an affidavit which qualifies with section 18.001 of the Code.

In the absence of a controverting affidavit, as material here, section 18.001 provides in part:

> an affidavit that the amount a person charged for a service was reasonable at the time and place that the service was provided and that the service was necessary is sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary.

The affidavit must conform to the requirements of subsection (c) and must be filed with the clerk of the court and a copy served on each party to the case at least 30 days before the day on which evidence is first presented at the trial of the case. Subsection (e) provides that the opposing party may controvert the claim reflected by the affidavit by a counteraffidavit filed with the clerk and served on the other party 30 days after receipt of the affidavit or at least 14 days before the day on which evidence is first presented or with leave of court. The term "must" as used in section 18.001 creates a condition precedent. *See* Tex. Govt. Code Ann. § 311.016(3). *See also* Helena Chemical Co. v. Wilkins, 47 S.W.3d 486, 493 (Tex. 2001). As crafted, section 18.001 provides a pretrial procedure to facilitate proof of the cost and necessity of services by traditional means at trial by timely

11

filing the statutory affidavit before trial and is otherwise sufficient to satisfy the condition precedent of the statute.

In December 2005, two affidavits for medical billing records of Covenant Health System were filed with the clerk in the total amount of $48,417.06. Later, a third affidavit for medical billing records by Covenant Health System containing 76 pages covering April 26, 2003 through February 10, 2004, in the total amount of $241,286.02 was filed with the clerk. Following selection of the jury, some evidence was presented on Monday, April 18, 2005. When court reconvened April 19, at the suggestion of the court and out of the jury's presence, Cleveland's counsel offered Exhibits 7 through 90 into evidence. Among other things, Bituminous's counsel objected to the admission of the affidavit filed April 18, 2005, marked Exhibit 67, because it was not timely filed per section 18.001; however, the objection was overruled,[5] and accordingly, the error charged was timely preserved for our review. *See* Tex. R. App. P. 33.1(a).

In order to be admissible under section 18.001, as above noted, the affidavit must be filed at least 30 days before presentation of evidence, and timely filing constitutes a condition precedent to admission into evidence. We conclude the trial court abused its discretion in admitting Exhibit 67.

_____

[5]In addition to computer generated billing on Covenant Health System heading dated April 15, 2005, Exhibit 67 also includes one sheet entitled "Summary of Mona Cleveland's Past Medical Bills," listing 22 providers including Covenant showing total past medical bills of $459,153.62. The jury found the reasonable and necessary medical care expenses incurred in the past to be $459,000.

Having determined that the admission of Exhibit 67 was error and is preserved for review, we must next determine if the error was harmful. The medical services and charges shown on Exhibit 67 total $241,286.02. This amount, together with the charges of the remaining providers shown on the summary of providers included in Exhibit 67 supports the jury award of $459,000. In *Hasty, Inc.*, after holding that evidence was erroneously received, the court held that because there was no other evidence to support an award of attorney's fees, the error was harmful. 908 S.W.2d at 503. Similarly, we hold the admission of Exhibit 67 showing medical expenses in the amount of $241,286.02 was erroneous, and in the absence of other evidence by traditional means of proof to support the expenses provided by Covenant Health Systems, was calculated to cause and probably did cause the trial court to render an improper judgment. Bituminous's fifth issue is sustained, and the award for past reasonable and necessary medical expenses in the amount of $459,000 is reduced by $241,286.02.

Accordingly, that part of the trial court's judgment awarding Mona Cleveland damages in the amount of $816,493.69 is reversed, and judgment is hereby rendered that she have and recover from Bituminous Casualty Corporation damages in the amount of $575,207.67; in all other respects the judgment is affirmed.

Don H. Reavis
Justice

13